Belle Virginia GOLDBLUM, Testamentary
Executrix of Succession of
George J. Woolhandler,

v.

Dr. Clarence E. BOYD et al.

Civ. A. No. 17691.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 10, 1973.

Cecil M. Phillips, Alston, Miller & Gaines, Atlanta, Ga., Simon Herold, James A. Van Hook, Billy R. Pesnell, Van Hook, Pesnell & Van Hook, Shreveport, La., for plaintiff.

Robert Roberts, Jr., John T. Cox, Jr., Blanchard, Walker, O'Quin & Roberts, Jacques L. Wiener, Wiener, Weiss & Wiener, Shreveport, La., for defendants.

### RULING

DAWKINS, Senior District Judge.

Plaintiff here, Belle Virginia Goldblum, in her capacity as Testamentary

Executrix of the Succession of George J. Woolhandler, brought this action as Executrix and as the representative of an alleged class said to be composed of each and every shareholder of Doctors' Hospital, Inc., of Shreveport, Louisiana.

She alleges defendants have offered to issue to them a voting trust certificate pursuant to the terms and conditions of a Voting Trust Agreement, the *quid pro quo* being of their exchanging shares of common stock held by them in the corporation. She claims all other shareholders who have accepted defendants' offer belong to the class, they having been issued voting trust certificates in exchange for their shares of stock. Plaintiff has declined this offer. She alleges violations by defendants of the Securities Act of 1933, contending that this Court has appropriate jurisdiction and venue of this suit under Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v.

Defendants are trustees of the Voting Trust created by the Agreement. Plaintiff seeks a declaratory judgment in behalf of all members of the alleged class, decreeing that the Agreement is unenforceable because of defendants' failure to comply with the Act. She also asks for rescission of all sales of voting trust certificates made pursuant to the Agreement, and restitution of all shares of stock transferred in exchange for trust certificates, unencumbered by any provisions of the Agreement.

Defendants are Drs. Clarence E. Boyd, Harold R. Bicknell, and Emily L. Jones, and William B. Wiener, an architect. They are the trustees named in the Agreement and are in fact acting as trustees pursuant to it. Dr. Woolhandler also was a trustee together with them when the certificates were issued.

The complaint essentially alleges that defendants did not register the certificates, which are claimed to be securities within the meaning of the Act, before they offered them to the public as required by Section 5, 15 U.S.C. § 77e;

and that defendants used the mails, and/or means or instruments of transportation or communication in interstate commerce in effecting the public offering and sales. Finally, plaintiff prays for reasonable attorney fees.

Prior to answering, defendants have filed a motion to dismiss the suit as a class action, contending first that plaintiff fairly and adequately cannot represent the interests of the class; and, in fact, that she is not a class member because her deceased husband was a trustee of the Trust and executed it in that capacity. Consequently, they argue he, like they, was an issuer of the certificates or in control of the issuer; or, if not an issuer or in control, he was an underwriter; that the persons constituting the alleged class are not so numerous as to make it impractical to bring them before the Court because the Act is for the benefit of those persons who have accepted and purchased a security offered or issued in violation of the Act; and, accordingly, this reduces the class only to those who have accepted the Agreement, some thirty in number, all of whom reside within a relatively close geographical area within the jurisdiction of this Court. This, they say, is substantiated by the fact that all these persons were brought into Court as defendants in a suit in the First Judicial District Court of Louisiana, Caddo Parish, involving a closely related matter; and that the questions of law and fact involved here are not common to the class as set forth in the complaint.

At this point, it is appropriate to note that this suit in actuality is one more attempt by Charter Medical Corporation to gain control of the corporation. Defendants point out that the very reason for forming this Voting Trust was to prevent that corporation from becoming a majority stockholder in the Hospital, thus controlling it. The Trustees successfully aborted the attempted takeover by Charter Medical. After Woolhandler's death, it is apparent, from an-

swers given by plaintiff to interrogatories propounded by defendants, that this corporation contacted her and offered to purchase his stock, if it could be freed from the Trust. The offer was for approximately $200 per share, the corporation offering to pay all court costs, provide their own attorneys, and also to pay plaintiff's attorney's fee up to $4,000. All this is evidenced by the agreement filed in the record in answer to the interrogatories.

Faced with this situation, we now must decide the propriety *vel non* of plaintiff's attempt to maintain this suit as a class action on behalf of all shareholders of the corporate hospital. Rule 23, F.R.Civ.Proc., is applicable, providing:

> "(a) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the represented parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> "(b) *Class actions maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> \*    \*    \*    \*    \*    \*

> "(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

For purposes of this motion, we consider those allegations of plaintiff's complaint as true and it is our considered opinion that the following approach fairly disposes of this matter, without determining all issues presented.

The pertinent provision of the Securities Act is Section 12, 15 U.S.C. §§ 77*l*, providing that:

> "Any person who—

> (1) offers or sells a security in violation of section 77e of this title, or

> \*    \*    \*    \*    \*    \*

> "*shall be liable to the person purchasing such security from him,* who may sue either at law or in equity, in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." (Emphasis ours.)

The relevant provisions of Section 5, 15 U.S.C. § 77e, are the following:

> "(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

> "(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

> \*    \*    \*    \*    \*    \*

> "(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or the mails to

offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title."

It is apparent from reading § 77*l* that any person who offers or sells an unregistered security is liable to the person *purchasing* such security from him. The Eighth Circuit in Greater Iowa Corp. v. McLendon, 378 F.2d 783, 789 (8th Cir., 1967), addressed the question of standing under § 5(a), 15 U.S.C. § 77e(a) and § 17(a), 15 U.S.C. § 77q, and § 12, 15 U.S.C. § 77*l*:

"The question before us on this appeal is, do plaintiffs have standing to enforce these provisions of the law?

"No civil enforcement is provided in the particular sections of the Act allegedly violated. However, § 12 of the Act (15 U.S.C. § 77*l*) provides a limited right of recovery to private litigants. This section of the Act generally provides that any person who sells through interstate commerce or by use of the mails any security not registered or makes untrue or misleading statements in the sale of a security 'shall be liable to the person purchasing such security from him. . . .'

"None of the plaintiffs has purchased any of the Iowa Trust certificates from the defendants. Since 15 U.S.C. § 77*l* *only provides relief to 'purchasers' it is clear that this section cannot provide plaintiffs with a basis upon which to seek recovery.* Furthermore, we do not believe that plaintiffs have standing as a class to represent the shareholders of Greater Iowa Corporation who did join the Iowa Trust. Plaintiffs' interests are not typical or representative of the interests of the individuals who purchased defendants'

securities. The positions of the individual plaintiffs present questions of law that are not common to the members of the class they are seeking to represent. Thus, under Rule 23, Fed. R.Civ.P. they are not entitled to maintain a class action on behalf of the Greater Iowa shareholders who are members of the Iowa Trust.

\* \* \* \* \* \*

"Aside from the board general welfare which the Commission alone is charged with protecting, we believe it is clear from the history and language of the statute that § 5(a) and § 17(a) were designed primarily for the protection of investors who may purchase the unregistered or fraudulently sold shares. S. E. C. v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). For that reason only these investors were given the express civil remedy. We do not believe that the statute was designed for the protection of those who are not investors or do not have any semblance of legal privity with the party dealing in the unregistered or fraudulently sold securities.

"The intent of Congress is clear. Section 12 provides a private civil remedy to 'purchaser'. We think this is the civil remedy given to private parties by the framers of the Act, and excludes establishment of additional private civil remedies. Had Congress desired to extend the private civil remedy it could have done so by the addition of only a few words. Its failure to do so, and its express limitation to 'purchasers' is a positive indication that Congress desired these provisions privately enforced by purchasers only. It is our conclusion that private civil liability for violations of § 5(a) and § 17(a) exists only when the provisions of § 12 (15 U.S.C. § 77*l*) are met. Therefore, plaintiffs have no jurisdictional standing to invoke the provisions of § 5(a) and § 17(a) of the 1933 Act."

Plaintiff informs us that the Second Circuit, whose experienced expertise with respect to securities cases is well known, has concluded that one need not be even a purchaser to enjoin a continuing violation of the Act, notwithstanding the earlier judicial precedent requiring that only a purchaser or seller had such standing, citing Kahan v. Rosenstiel, 424 F.2d 161 (3 Cir., 1970) ; Crane Co. v. Westinghouse Air Brake Company, 419 F.2d 787 (2 Cir., 1969) ; Iroquois Industries, Inc., v. Syracuse China Corporation, 417 F.2d 963 (2 Cir., 1969), and Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2 Cir., 1957). Plaintiff intimates that Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir., 1952), cert. denied, 343 U.S. 956, 72 S. Ct. 1051, 96 L.Ed. 1356, has fallen by the wayside.

The Fifth Circuit holds otherwise:

"In the leading case of Birnbaum v. Newport Steel Corporation, 2 Cir. 1952, 193 F.2d 461, cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, the court construed the language 'in connection with the purchase or sale of any security' as limiting standing to sue to buyers or sellers of securities.

"In Rekant v. Desser, 5 Cir. 1970, 425 F.2d [872] at 877, we said:

'BIRNBAUM has been shot at by expert marksmen. The buyer-seller requirement for standing has been criticized as too strict a reading of the rule. Commentators have said that Birnbaum has been significantly eroded in a variety of later cases, even in the Second Circuit. Cf. Crane Co. v. Westinghouse Airbrake Co., 2 Cir. 1969, 419 F.2d 787. See also Kahan v. Rosenstiel, 3 Cir. 1970, 424 F.2d 161 (injunctive relief). *Bloody but unbowed, Birnbaum still stands.* Iroquois Industries, Inc. v. Syracuse China Corporation, 2 Cir. 1969, 417 F.2d 963; Greenstein v. Paul, 2 Cir. 1968, 400 F.2d 580.' "

Cooper v. Garza, 431 F.2d 578 (5th Cir., 1970). (Emphasis ours.)

Section 17(a) of the Act, 15 U.S.C. § 77q(a), is identical to Rule 10(b)(5) except for substitution of "any person" in Rule 10(b)(5)(4) for the term "purchaser" and the addition of the final clause "in connection with the purchase or sale of any security." Morrow v. Shapiro, 334 F.Supp. 399 (E.D.Mo., 1971). We must also note that the cases cited by plaintiff pertain entirely to the Securities and Exchange Act of 1934 and Rule 10(b)(5), wherein the Courts have expanded the conventional meaning of "seller" to include "forced sellers" who "as a practical matter" have no choice but to surrender their interests in the corporation and to exchange their shares for cash. Coffee v. Permian Corporation, 434 F.2d 383 (5th Cir., 1970). *That situation is not presented here.*

The Ninth Circuit has stated in Mt. Clemens Industries, Inc. v. Bell, 464 F. 2d 339, 342 (9 Cir., 1972), that

"Since securities transactions are conducted on a nationwide scale, often without regard for geographical boundaries, we attach significant importance to the fact that every other Court of Appeals that has considered this issue has adopted the 'purchaser-seller' requirement."

Surely, plaintiff here cannot represent those persons in a class action who could not represent themselves if they brought suit in their own behalf, for to have standing they must have purchased securities which have been issued or offered in violation of the Act. At this late date, it cannot be doubted that buyers—and only buyers—of securities are beneficiaries of federal protection of the laws plaintiff relies upon and not parties who admittedly are not buyers. See, *e. g.*, Mt. Clemens Industries, Inc. v. Bell, *supra*; Dudley v. Southeastern Factor and Finance Corporation, 446 F.2d 303 (5th Cir., 1971); Coffee v. Permian Corporation, *supra*; Cooper v. Garza, *supra*; Herpich v. Wal-

lace, 430 F.2d 792 (5th Cir., 1970) (therein the Court addressed the "standing" question in relation to Article 3 of the United States Constitution); Superintendent of Insurance of the State of New York v. Bankers Life & Casualty Co., 430 F.2d 355 (2d Circuit., 1970); Erling v. Powell, 429 F.2d 795 (8th Cir., 1970); Simmons v. Wolfson, 428 F.2d 455 (6th Cir., 1970); Kahan v. Rosenstiel, *supra*; Crane Company v. Westinghouse Air Brake Company, *supra*; Iroquois Industries, Inc., v. Syracuse China Corporation, *supra*; Mutual Shares Corporation v. Genesco, Inc., *supra*, and Greater Iowa Corporation v. McClendon, *supra*.

We conclude, therefore, that plaintiff may not proceed with this action on behalf of all stockholders of Doctors' Hospital, Inc. If allowed to do so, with a membership consisting of only those who were purchasers, Rule 23 would be rendered a catch-all.

We now determine whether the remaining "sub-class" meets the prerequisites of Rule 23 to afford plaintiff the right to maintain this as a class action on behalf of those who accepted the Voting Trust offer from defendants.

We, therefore, will consider whether the class is so numerous that joinder of all members is impracticable. As already noted, the class plaintiff seeks to represent is composed only of those persons who executed the Voting Trust Agreement, the total number of thirty-one, including the four surviving Trustees. Of this class, all reside in Shreveport except four. Of the four who do not reside here, two reside in East Baton Rouge Parish, Louisiana, and two reside outside Louisiana; but these two are represented insofar as their interest in the Voting Trust Agreement is concerned by their father, himself a party

to the Voting Trust Agreement, and he, too, lives in Shreveport. Plaintiff has attempted to bring these few persons into Court as defendants in a suit in the Caddo Parish District Court, Civil Docket No. 207,578.

■ Although the mere number of members of a class is not controlling, it is most significant and a *sine qua non* to be considered:

"It has become well established in our law that 'impracticability' as used in Rule 23 does not mean 'impossibility,' but rather refers to the difficulty or inconvenience of joining all members of the class . . . . It appears that the question of whether a number is so large as to make joinder impracticable is dependent not upon any arbitrary limit, but rather upon the circumstances surrounding the case. 3B Moore's Federal Practice ¶ 23.05, at 277–78 (2d ed. 1969)." Forbush v. Wallace, 341 F.Supp. 217 (M.D.Ala., 1971).

The Fifth Circuit, in Hudson v. Newell, 172 F.2d 848 (1949), disposed of a class action composed of 96 members* by stating:

"Two of these suits allege that the claimants not joined as parties are too numerous to be joined, but that those joined are proper to represent them as a class. The court has taken no action making them class suits. We do not see how this could well be done. They were not too numerous to be joined in the Chancery Court. . . ." At page 851–852.

■ It is our view that it is not at all impractical to join all parties in this suit because virtually their entirety are within the same geographical area. Demarco v. Edens, 390 F.2d 836 (2d Cir.,

---

* Although we did not find the number in the class expressed in the *Hudson* opinion, we note that in Board of Supervisors v. Tureaud, 228 F.2d 895 (5th Cir., 1956), at Note 2, the Court stated, "In Hudson v. Newell . . . we held that a suit would not succeed as a class action where the defendants were ninety-six in number."

1968); Hirschi v. B & E Securities, Inc., 41 F.R.D. 64 (D.C.Utah, 1966).

Parenthetically, if we are mistaken, we note that plaintiff alleges this to be a class action under 23(b)(3). Section 23(c) provides:

"In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date . . . ."

Here, every member of the sub-class (those who accepted the Voting Trust Agreement) has executed an affidavit to the effect that he or she does not wish to be included in the class represented by plaintiff. Consequently, any judgment rendered would be *res judicata* only as to plaintiff and, of course, the defendants.

We also note, as previously stated, that this controversy is only another move in a would-be chess game to gain control of Doctors' Hospital, Inc., and it is apparent that those who are members of the Trust desire it to maintain control of the corporation, having no desire whatever for Charter Medical Corporation to gain the controlling interest it seeks through its plaintiff-puppet.

It therefore is found that this suit is not a proper vehicle for a class action by the named plaintiff, and defendants' objections to maintenance of the suit as such are sustained. Plaintiff is granted leave to file an amended complaint within ten days from entry of this order, striking all reference to the class action. This suit shall proceed only as an action by plaintiff in her own behalf, and as Executrix. Following service of such amended complaint upon defendants, they shall have ten days within which to move or otherwise plead in response thereto.