Thedress **CAMPBELL**

v.

**A. C PETERSEN FARMS, INCORPORATED.**

**Civ. No. H–74–306.**

United States District Court,
D. Connecticut.

Dec. 23, 1975.

John F. Murphy, Jr., Hartford, Conn., for plaintiff.

Brian Clemow, Hartford, Conn., for defendant.

## RULING ON PENDING MOTIONS

BLUMENFELD, District Judge.

This civil rights action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Supp. II, 1972). The plaintiff, a black male, alleges that the defendant corporation, his former employer, discriminated against him on account of his race. He prays for relief for himself, and the class which he seeks to represent, in the form of back pay and an injunction against continued discriminatory practices. The matter is currently before me for rulings on several motions.

The defendant moved to dismiss the class action element of the plaintiff's complaint or, in the alternative, for a determination of the scope of the appropriate class. While contending that a ruling on the class action issue was premature, the plaintiff also moved for permission to file an amended complaint. In that proposed complaint, he has significantly broadened the definition of the class which he seeks to represent, and has added a number of additional claims and a prayer for punitive damages. The defendant opposes the plaintiff's motion. It argues that the proposed amendments are inadequate as a matter of law, and that "it would be an idle move for the court to allow such an amendment,"[1] when the complaint as amended would still be subject to a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P.

■ Although I have authority to disallow legally insufficient amendments,[2] such an approach would needlessly complicate the pleadings in the instant case. Instead, I will grant the motion to amend and construe the defendant's motion as a motion to dismiss elements of the complaint as amended. This approach does not prejudice either party, as both have had ample opportunity to address the relevant issues.

In his amended complaint, the plaintiff alleges that he was hired in January 1970 as a management trainee by the defendant, a corporation which operates a chain of dairy-related stores. As a trainee, he was evaluated periodically, and ultimately was promoted to the position of branch manager of the defendant's store in Manchester, Connecticut. An increase in salary and benefits accompanied this promotion. Later he was demoted to the position of assistant manager in another store, purportedly because the store which he was managing had been losing money. The plaintiff also was removed from the salary and bonus scale which he had enjoyed, and was placed instead on an hourly wage schedule. The plaintiff claims that his demotion was racially motivated and, in support of his allegation, notes that white managers whose stores were losing even more money than his own were not similarly treated.

In April 1973 the plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities (state commission) and the Equal Employment Opportunity Commission (EEOC). The plaintiff alleges that the defendant reacted to these complaints by asking him to resign, in return for a lump sum settlement payment and a favorable job recommendation. The plaintiff refused this offer and chose to continue as assistant store manager. However, he was fired on July 16, 1974, allegedly for insubordination and violation of company rules and policy. The plaintiff alleges that his termination was racially motivated as well. Finally, the plaintiff charges that the defendant maintained a different and lower pay scale for blacks in its employ.

---

1. Citing 3 J. Moore, *Federal Practice* ¶ 15.08 ■ at 904 (2d ed. 1974).

2. Rule 15(a), Fed.R.Civ.P. *See, e. g., Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 385 (2d Cir. 1968).

The state commission found reasonable cause to believe the plaintiff's charges, but the conciliation efforts which followed that determination were unsuccessful. The plaintiff encountered no greater success in obtaining relief from the EEOC. His original complaint to that commission alleged only that his demotion had been racially motivated.[3] He later amended that complaint and alleged more broadly that "I have been harassed in my job." The EEOC found probable cause to believe some elements of the plaintiff's charges, but discounted others. The parties were invited to engage in conciliation efforts, but instead the plaintiff sought and obtained a right to sue notice.[4] This action followed.

### Challenge to Allegation Regarding Grooming Standards

In paragraph 13 of his amended complaint, the plaintiff alleges:

"As a condition of his hiring and/or. prior to his hiring, the plaintiff was asked to have his hair cut and to shave and/or cut his beard and/or his moustache, both of which he did. The aforesaid physical requirements are unlawful employment practices under Title VII as asserted in Paragraph 11."

The defendant challenges the plaintiff's entitlement to litigate this claim on procedural grounds, and also argues that, insofar as it alleges sex discrimination, the claim is legally insufficient.

■ The manner in which the plaintiff has stated his claim makes it unclear whether he charges sex or race discrimination. To the extent it states a claim of sex discrimination, it is time barred and may not be raised in this law suit. It is clear that this issue was not raised within 90 days of plaintiff's receipt of his right to sue notice from the EEOC as is required by the statute.[5]

■ The original complaint, which was filed within the statutory period, contained no reference to the defendant's hair regulation and did not allege any other act of sex discrimination; the gravamen of that complaint was exclusively race discrimination. Therefore this new allegation cannot be deemed to arise out of the "conduct . . . set forth in the original pleading" and cannot be held to relate back to the date of the filing of the original complaint. Rule 15(c), Fed.R.Civ.P.

■ If, however, paragraph 13 of the amended complaint charges racial discrimination in the defendant's grooming regulation, the defendant's challenge raises other issues. In *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973), the Second Circuit, quoting from *Snoqualmie Tribe v. United States*, 372 F.2d 951, 960, 178 Ct.Cl. 570 (1967), ruled that

"the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading."

The original pleading in the instant case did not specifically refer to the defend-

---

3. The plaintiff's original EEOC complaint stated:
    "On March 1, 1973 I was informed by Messrs. Ray Petersen (owner) and Victor Thompson (Store Supervisor & Vice President) that I was being demoted from my position as store manager in Manchester, Conn. to assistant manager in the Bloomfield, Conn. store. The reasons given were:
    1. Store was losing profits
    2. Unable to retain employees.
    Although other stores were losing profits, there were no demotions. As far as my

being unable to retain help, it should be understood that a certain amount of turnover occurs in all the stores and for the most part my association with with [sic] my fellow employees was excellent.
    "I believe that my demotion was a direct result of my color (Black)."

4. Pursuant to 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972).

5. 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972).

ant's grooming policy. However, the *general* fact situation alleged in that complaint was replete with reference to the defendant's racially discriminatory policies and practices, and thus adequately placed the defendant on notice that other specific manifestations of its alleged racial attitudes might be charged in subsequent amendments. In so holding, I am mindful that a narrow, restrictive reading of the standard of Rule 15(c) would be inconsistent with "the remedial and humanitarian underpinnings of Title VII . . . ."[6]

█ The defendant also argues that litigation of the validity of the grooming regulation is barred because the plaintiff did not present the claim to the EEOC, and thus has not exhausted his administrative remedies with respect to that claim. However, as this court has recently pointed out:

"In determining whether particular allegations in a complaint are sufficiently related to the allegations in an EEOC charge as to which there has been sufficient exhaustion, courts have used two similar standards. One is that the judicial proceedings may encompass any discrimination like or reasonably related to that alleged in the EEOC charge, including new acts occurring during pendency of the EEOC charge. *See, e. g., Alpha Portland Cement Co. v. Reese,* 507 F.2d 607 (5th Cir. 1975); *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569 (9th Cir. 1973); *Willis v. Chicago Extruded Metals Co.,* 375 F. Supp. 362 (N.D.Ill.1974); *Russell v. American Tobacco Co.,* 374 F.Supp. 286 (M.D.N.C.1973); *Hecht v. CARE, Inc.,* 351 F.Supp. 305, 311–312 (S.D. N.Y.1972). The other standard, which may in fact be no different, is that the court proceedings may include everything within the scope of the EEOC investigation that might reasonably be expected to grow out of the charges. *See, e. g., Tipler v. E. I. duPont deNemours & Co.,* 443 F.2d 125, 131 (6th Cir. 1971); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). The expectable scope of the EEOC investigation is *very* broad, apparently including, *inter alia,* new acts occurring during the pendency of the EEOC charges. *See, e. g., EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir. 1975)."

*Ortega v. Construction & Gen'l Laborers' Union No. 390,* 396 F.Supp. 976, 980 (D.Conn.1975).

In this case, the application of the second standard supports the plaintiff's position. The EEOC investigated the defendant's grooming policy, although the investigation apparently was limited to that policy's sexually discriminatory aspects. The fact, however, that the EEOC focused upon the grooming policy as an object of investigation is sufficient by itself to satisfy the standard involved herein.

█ That standard requires not only that the EEOC have investigated the charge sought to be litigated, but also that it was expectable, or foreseeable, that it might do so. The EEOC was not limited by the first complaint. It also could investigate the amended complaint containing the more general charge of employer harassment. Given the broad scope of the EEOC's power to investigate, it was entirely foreseeable that a hair grooming policy might be investigated as an element of a charge of harassment.[7]

---

6. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir. 1970).

7. It could be argued that the EEOC issued its right to sue notice prematurely, well before 180 days had passed from the date of the amended complaint on which the investigation of the grooming policy was apparently predicated. 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972). The EEOC, however, has provided by regulation, 29 C.F.R. § 1601.-11(b) (1974), that an amendment will relate back to the filing date of the original charge

However, this does not exhaust the defendant's challenge to paragraph 13 of the amended complaint. It also argues that plaintiff's challenge to the grooming policy was not presented to the EEOC within 300 days of the time within which the plaintiff was subjected to that policy, as required by the statute,[8] and thus that issue cannot be litigated here. The defendant notes that paragraph 13 specifically alleges that the plaintiff was required to have his hair cut and his beard and moustache shaved as a condition of his original employment. This occurred no later than January 1970, and thus, the defendant argues, the complaint was untimely with respect to the grooming issue.[9]

■ However, "[i]t is settled law that the [300] day limitation period is no bar when a continuing practice of discrimination is being challenged rather than a single, isolated discriminatory act."[10] Grooming standards would certainly constitute such a "continuing violation." However, the defendant has submitted the affidavit of its president, Paul E. Petersen, to the effect that the grooming policy was phased out by January 1972, more than 300 days before the filing of the original EEOC complaint.

■■ If Mr. Petersen's affidavit remains unrefuted, the plaintiff's claim with regard to the racially discriminatory aspects of the defendant's grooming policy will have to be dismissed. The timely filing of a claim before the EEOC is a mandatory prerequisite to the subsequent maintenance of such a claim in federal court.[11] However, because of the unusual procedural posture of this case, it is appropriate to allow the plaintiff an opportunity to present evidence to counter the Petersen affidavit on this point. See Fed.R.Civ.P. 12(c). Should he fail to present such

---

if it alleges "additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge." Here the subsequent generalized charge of harassment is certainly related to the earlier alleged specific act of harassment, the demotion for racially discriminatory purposes. Cf. Sanchez v. Standard Brands, 431 F.2d 455, 464 (5th Cir. 1970). Therefore, the timeliness of the right to sue notice is appropriately measured here in relation to the date of the original complaint. As so measured, it was timely.

8. 42 U.S.C. § 2000e–5(e) (Supp. II, 1972) provides:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

9. The complaint was filed with the EEOC in April 1973. The appropriate date for measuring timeliness for the purposes of 42 U.S. C. § 2000e–5(e) (Supp. II, 1972) is that of the filing of the original, as opposed to the amended, complaint. See note 7 supra.

10. Bartmess v. Drewrys U.S.A., Inc., 444 F. 2d 1186, 1188 (7th Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). See, e. g., Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 986–87 (1973); Loo v. Gerarge, 374 F.Supp. 1338, 1340 (D.Hawaii 1974); Kohn v. Royall, Koegel and Wells, 59 F.R.D. 515, 518 (S.D.N.Y.1973).

11. See, e. g., Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir. 1972); Ortega v. Construction & Gen'l Laborers' Union No. 390, 396 F.Supp. 976 (D.Conn.1975).

evidence within 15 days of this ruling, his claim will be dismissed. *Cf.* Fed.R. Civ.P. 56.

### Class Action

The defendant has also moved to dismiss the class action claim or, if that motion is denied, for a determination of the composition of the class. The challenge is based on plaintiff's alleged inability to meet the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure.[12] The plaintiff does not contend that the prerequisites for a class action have been met, but that a ruling on the class action claim should be deferred until the completion of discovery. He cites three decisions he claims support his position. However, the cases on which he relies merely hold that the trial court *may* defer ruling on the class certification issue, pending discovery.[13]

In *Neigler v. Getty Oil Co.,* Civil No. 15,602 (D.Conn. Aug. 31, 1973), the court deferred its ruling on a motion to dismiss the class action claim because of the nature of the plaintiff's claim. The court was concerned that, in light of the mandatory damage provisions in federal truth-in-lending actions,[14] class enforcement might not be "superior to other available methods for the fair and efficient adjudication of the controversy."

Rule 23(b)(3), Fed.R.Civ.P. Here, however, there is no similar doubt about the *propriety* of class enforcement, if the requirements of Rule 23 are met.

The other two cases cited by the plaintiff are equally inapplicable. In *Dickerson v. U. S. Steel Corp.,*[15] the court merely denied the defendant's motion to defer its response to plaintiff's interrogatories pending a class action determination. The court held that the defendant should have objected to the scope of the interrogatories, rather than seek to modify the earlier pre-trial order requiring discovery before ruling on the class certification issue. The court went on to note that, in that case, it considered discovery on the class action claim itself to be necessary before it could rule.[16] In the last case on which plaintiff relies, the Court of Appeals for the Fifth Circuit also held that discovery could be permitted prior to a ruling on the maintainability of the class action.[17] Although pointing out that more information is usually desirable, the Fifth Circuit explicitly noted that the maintainability issue can be determined on the basis of the pleadings.[18]

Several other courts have also permitted discovery related to the class action claims to go forward prior to a ruling on the maintainability question. In *Stokes v. United States Immigration &*

12. Rule 23(a) provides:
"Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class."

13. As is suggested from a reading of Rule 23(c)(1):
"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

14. 15 U.S.C. § 1640(a)(1) sets a $100 floor on damage awards made in federal truth-in-lending actions.

15. 8 E.P.D. ¶ 9479 (E.D.Pa.1974).

16. The court later certified a (b)(2) class action, involving 839 black employees, as well as future employees and rejected applicants. *Dickerson v. U. S. Steel Corp.,* 64 F. R.D. 351 (E.D.Pa.1974).

17. *Huff v. N. D. Cass Co. of Alabama,* 485 F.2d 710, 712 n. 3 (5th Cir. 1973).

18. *Id.,* at 713.

*Naturalization Service,*[19] the court permitted such discovery because there were sharp factual conflicts regarding the size and composition of the alleged class. The legality of any particular search and seizure rested in large measure on the facts and surrounding circumstances, thus clouding the maintainability issue at that stage because of the "commonality" requirement of Rule 23(a). A similar rationale was applied in *Taliaferro v. State Council of Higher Education,*[20] where Judge Mehrige permitted limited discovery to determine whether particular plaintiffs and defendants were properly includable in the class action. There the defendants conceded that the "numerosity" requirement was met, and the claim turned on the "commonality" and "typicality" issues. Discovery was permitted as to the plaintiffs' conspiracy claim, since proof of such a connective policy link among the defendant universities would make class treatment appropriate. Finally, in *Yaffe v. Powers,*[21] discovery was also permitted with respect to the "commonality" problem, because the determination of maintainability depended "on information wholly within the defendants' ken."[22]

Here, however, I have sufficient facts, from the pleadings and affidavits which have been filed, to rule on the maintainability issue.[23] The challenge presented goes to the "numerosity" requirement, and is particularly appropriate for determination at the threshold of the litigation.[24] The standards to be applied in determining whether the "numerosity" requirement has been met are fairly well-established, and the factual issue is readily determinable. We begin with the understanding that:

> "not every civil action brought pursuant to Title VII automatically qualifies as a proper class action under the stringent requirements of Rule 23(a)."[25]

Although the determination that "the class is so numerous that joinder of all members is impracticable" may not be made on the basis of numbers alone, that factor is necessarily an important one.[26] Also relevant is the geographic concentration, or lack thereof, of the members of the proposed class.[27] The burden of proof rests on the plaintiff to "make a positive showing that it would be impracticable to deny the prayer" for class certification.[28]

---

19. 393 F.Supp. 24, 33 (S.D.N.Y.1975).

20. 372 F.Supp. 1378 (E.D.Va.1974).

21. 454 F.2d 1362 (1st Cir. 1972).

22. *Id.,* at 1366. Judge Wyzanski later questioned the propriety of such apparently wide-ranging discovery prior to certification of the class. *Dionne v. Springfield School Committee,* 340 F.Supp. 334 (D.Mass.1972).

23. *See Hyatt v. United Aircraft Corp.,* 50 F.R.D. 242 (D.Conn.1970).

24. In the cases discussed in the preceding paragraph, as well as in *Neigler, Dickerson* and *Huff,* the defendants' objections were not based on a failure to meet the numerosity requirement.

25. *Kinsey v. Legg, Mason Co., Inc.,* 60 F.R.D. 91, 98 (D.D.C.1973). Even the cases describing Title VII suits as "inherently" class actions require that the plaintiff comply with the prerequisites of Rule 23(a). *See,*

e. g., *Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 50 (5th Cir. 1974).

26. *Cash v. Swifton Land Corp.,* 434 F.2d 569, 571 (6th Cir. 1970) states that:
> "It is clear, however, that an action is not maintainable as a class action merely because it is designated as such in the pleadings."

Class action treatment has been found inappropriate in cases involving as many as 31 plaintiffs. *Goldblum v. Boyd,* 60 F.R.D. 421 (W.D.La.1973). Other cases have found 26 to be too few, in the circumstances there presented, to warrant class certification. *Wilburn v. Steamship Trade Ass'n of Baltimore, Inc.,* 376 F.Supp. 1228 (D.Md.1974) and *Corp. of Haverford College v. Reeher,* 329 F.Supp. 1196 (E.D.Pa.1971).

27. *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968).

28. *Id.*

■ The plaintiff in this case has failed to carry that burden. He has made no showing whatsoever "that the proposed class is, in fact, numerous . . . ." [29] Instead, the record contains only his "conclusory averments" that there are numerous members in the class.[30] In this regard, I take note of the fact that no other EEOC complaint has been filed against this defendant.[31] The affidavits filed on this motion show that the defendant now employs only six blacks, three full- and three part-time. They further show that the defendant has employed only three other black workers, all on a full-time basis, since January 1970. Finally, they show that the plaintiff is the only black who ever held the positions of store manager, assistant store manager, or manager trainee. Although two other blacks were hired as manager trainees, they never commenced employment with the defendant.[32] The plaintiff has not alleged, or offered any evidence, to the contrary. Thus, it appears from the present state of the record that the maximum possible size of plaintiff's alleged class of "present and former black employees" is twelve, including himself. Seven of them must presently be residents of the area, and plaintiff has presented no information as to the present whereabouts of the other potential class members. This is not a proper situation for a class action.

The plaintiff seeks to avoid this result by further alleging that his proposed class consists of

"all Blacks who would have been applicants for employment but because they were Black did not apply for employment with the said defendant because of its unlawful employment practices."[33]

However, he offers no facts whatsoever in support of his claim that such a group exists, or is identifiable in any manner for purposes of granting relief. The Court of Appeals for the Sixth Circuit rejected certification of a nearly identical class, consisting, *inter alia*, of "black employees who would have applied but for defendant's discriminatory hiring policy," in *EEOC v. Detroit Edison Co.*[34] The court held that, since the district court had not entered a Rule 23(c)(1) certification order, the class in the case was the one described in a decision filed before trial, not that described in the subsequent ruling on the merits. The court went on to reject certification of the "deterred" class on another ground as well, because there might be a conflict of interests between them and the employee plaintiffs. The court also pointed out that:

"Although the private plaintiffs pled that Edison has established a reputation in the black community for discriminating against applicants because of race or color, there was no allegation that this reputation actually deterred anyone from applying for employment. No witness testified that he would have applied for employment at Edison but was deterred because of its bad reputation. Several employees of Edison testified to a reputation for discrimination against blacks, but these were people who did not rely on the reputation and were accepted for employment."[35]

29. *Cannon v. Texas Gulf Sulphur Co.*, 53 F.R.D. 216, 219 (S.D.N.Y.1971).

30. *Male v. Crossroads Associates*, 320 F.Supp. 141 (S.D.N.Y.1970). *See also, Male v. Crossroads Associates*, 337 F.Supp. 1190 (S.D.N.Y.1971), *aff'd*, 469 F.2d 616 (2d Cir. 1972).

31. As did Judge Grisea in *O'Connell v. Teachers College*, 63 F.R.D. 638 (S.D.N.Y. 1974).

32. Affidavit of Paul E. Petersen, President of the defendant corporation, February 21, 1975.

33. Amended Complaint, ¶ 35.

34. 515 F.2d 301, 310 (6th Cir. 1975), *petition for cert. filed*, 44 U.S.L.W. 3214 (U.S. Oct. 7, 1975) (No. 75-393).

35. *Id.*, at 312.

Furthermore, the EEOC did not request relief for this part of the class, and referred to it as an "amorphous" group, the inclusion of which would create difficulties with regard to relief.

Similarly, in *Jones v. Holy Cross Hospital Silver Spring, Inc.*[36] the court refused to certify a Rule 23(b)(3) class consisting, *inter alia, of*

> "all black employees who . . . might have sought . . . employment and promotion by the defendant . . . and who . . . might have been . . . adversely affected because of their race."[37]

There the court characterized the proposed class as "amorphous," pointing out that it could "include most of the adult black residents of the Washington metropolitan area."[38]

I am faced with a very similar situation, except that it is the adult black population of Hartford, not Washington, D.C., which could all be included in the plaintiff's proposed class. Here, however, the plaintiff's claim is even weaker than those discussed in the preceding two paragraphs. The plaintiff has failed to make even the minimal allegations regarding the defendant's reputation in the community held insufficient in *EEOC v. Detroit Edison Co.*,[39] much less aver that there was any deterrence

impact from this supposed reputation or provide any factual basis for such allegations. Instead, this part of the amended complaint consists of conclusory statements which merely track the language of Rule 23(a). The factual allegations which form the basis of this action are limited to the wrongs Mr. Campbell allegedly experienced at the hands of the A. C. Petersen Farms, Inc. As the amended complaint makes clear, this is really a case involving Mr. Campbell's personal grievances with the defendant. Class treatment is inappropriate in such a situation.[40]

Accordingly, I shall grant the defendant's motion to dismiss the class action aspects of this case. Those paragraphs of the amended complaint and prayer for relief, 35–39 and 3, respectively, are hereby dismissed.

### *Punitive Damages*

One of the amendments to plaintiff's original complaint is a prayer for an order directing the defendant to pay punitive damages. I have considered the arguments of counsel, as well as the decisions awarding and denying punitive damages in Title VII cases.[41] The statute authorizes injunctive relief and affirmative action, including rehiring and backpay awards.[42] In addition, it per-

---

**36.** 64 F.R.D. 586 (D.Md.1974).

**37.** *Id.*, at 590.

**38.** *Id. See also Committee to Free The Fort Dix 38 v. Collins,* 429 F.2d 807, 812 (3d Cir. 1970). The decision in *Barnes v. Board of Trustees, Michigan Veterans Trust Fund,* 369 F.Supp. 1327 (W.D.Mich.1973) does not suggest a different result in this case. There the class included persons deterred from filing for benefits by the five-year residency requirement struck down in that case as impinging upon the constitutional right to travel. There the statute explicitly stated that such persons need not apply, while here the supposed reputation of the defendant is alleged to have caused the non-applications.

**39.** 515 F.2d 301 (6th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3214 (U.S. Oct. 7, 1975) (No. 75–393).

**40.** *See, e. g., Washington v. Safeway Corp.,* 467 F.2d 945 (10th Cir. 1972) ; *Patterson v. General Motors,* 10 F.E.P. Cases 921 (N.D. Ill.1974).

**41.** *Compare EEOC v. Detroit Edison Co.,* 515 F.2d 301, 308–10 (6th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3214 (U.S. Oct. 7, 1975) (No. 75–393), and cases cited therein, *with Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1261–64 (1971). *See also Gillin v. Federal Paper Board Co., Inc.,* Civil No. 12,287 (D.Conn.1975).

**42.** 42 U.S.C. § 2000e–5(g) provides, in part:
  "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from

mits the courts to grant "any other equitable relief as the court deems appropriate." But, as the Court of Appeals for the Sixth Circuit pointed out, damages—compensatory and punitive—constitute legal, not equitable, relief.[43] Thus, I agree with the conclusion reached by that court, and hold that punitive damages are not available in an action brought under Title VII.

The recent decision in *Albermarle Paper Co. v. Moody* [44] does not require a different result. There the Supreme Court emphasized the twin purposes of Title VII, eliminating discrimination and compensating its victims, in requiring district courts to "carefully articulate" their reasons for refusing to award backpay.[45] The Court went on to note that:

> "Title VII is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivations.'"[46]

Thus, good intent is not a defense to a Title VII violation.

■■■ Punitive damages are generally based on the "degree of culpability" of the defendant,[47] and are awarded

> "to punish a defendant for the outrageous nature of his conduct and to de-

ter the defendant and others from engaging in the same or similar acts."[48] Such damages do not "restore the victim" for harm inflicted by the conduct of the defendant.[49] Punitive damages, therefore, could only be awarded in furtherance of the first objective of Title VII—the eradication of discrimination throughout the economy. The injunctive relief already available under Title VII, including affirmative action involving rehiring and backpay awards, is strong medicine. And civil contempt penalties, including fines, are available if the injunction is disobeyed. Since the Supreme Court has only recently made it clear that backpay is usually an appropriate and necessary remedy in these cases, the statutory remedies have not yet had an opportunity to work their full deterrent effect. Thus, I decline to read into the phrase "other equitable relief" a power to award punitive damages for deterrent purposes.

■■■ Treating the defendant's brief in opposition to the motion to amend the complaint as a motion to dismiss, I grant that motion, and order the dismissal of paragraph 5 of the prayer for relief in plaintiff's amended complaint.

### Conclusion

The plaintiff's motion to amend the complaint is granted. The defendant's motions to dismiss the class action and

engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate."

43. *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 309 (6th Cir. 1975), *petition for cert. filed*, 44 U.S.L.W. 3214 (U.S. Oct. 7, 1975) (No. 75–393).

44. 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

45. *Id.*, at 421 n. 14, 95 S.Ct. 2362.

46. *Id.*, at 422, 95 S.Ct. 2362, 2374, quoting from *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

47. *Massachusetts Bonding Co. v. United States*, 352 U.S. 128, 129, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956).

48. *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 549 (D.C.Cir.), *cert. granted*, —— U.S. ——, 96 S.Ct. 355, 46 L.Ed.2d 276 (1975).

49. *Williams v. City of New York*, 508 F.2d 356, 360 (2d Cir. 1974).

punitive damage claims are also granted. The plaintiff will be permitted 15 days in which to present evidence concerning the termination date of the defendant's grooming policy. It is

So ordered.