Oneida ADAMES et alia, Plaintiffs,

v.

MITSUBISHI BANK LTD., Defendant.

No. CV–89–3322.

United States District Court,
E.D. New York.

July 9, 1990.

1566

Hockert & Flamm, New York City, for plaintiffs.

Epstein Becker & Green, P.C., New York City, for defendant.

### MEMORANDUM AND ORDER

SIFTON, District Judge.

This employment discrimination action was filed in October 1989 by four former employees of defendant, Mitsubishi Bank Ltd. ("Mitsubishi" or the "bank"), pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The complaint, filed on behalf of plaintiffs and a similarly situated class of "non-oriental" or "non-Japanese" employees of the bank, seeks redress from discrimination by the defendant on the grounds of race, descent, ancestry, ethnic and national origin and characteristics in promotion and in the terms and conditions of their respective employment. Plaintiffs also seek relief under the New York State Human Rights Law, Executive Law § 296. Plaintiffs have not sought leave to consolidate this complaint with another pending action alleging violations of 42 U.S.C. § 1981 based on substantially similar factual allegations.

This matter is now before the Court on defendant's motion to dismiss both the title VII and Human Rights Law claims. For the foregoing reasons, defendant's motion is denied.

Plaintiffs, Oneida Adames, Nancy G. Farinola, Mirsada Krlic, and Lisa Poggi, are four former employees of Mitsubishi Bank. They allege that Mitsubishi has a pattern and practice of denying promotion, training, transfers, and various employment benefits to non-oriental and non-Japanese employees. Plaintiffs further allege that non-oriental and non-Japanese employees are subject to more exacting job performance standards and were and are sub-

ject to a racially hostile working environment. Two of the four named plaintiffs, Krlic and Poggi, allege that they have complied with the statutory notice and filing requirements necessary to maintain a Title VII lawsuit.

*Poggi's Initial Charge*

Plaintiff Poggi was hired by defendant Mitsubishi on September 4, 1984, and resigned her employment effective December 3, 1985. Poggi filed a charge of discrimination against Mitsubishi with the Equal Employment Opportunity Commission ("EEOC") on December 3, 1985. Poggi charged that she believed she had been "discriminated against because of my sex/female and national origin/American." In her charge, Poggi stated that, although she was hired as a research analyst, she was only allowed to perform secretarial duties. According to Poggi, another "American: female resigned from the Bank in 1985 for similar reasons." Poggi complained that an oriental female employee, who was also hired as a Research Analyst, was allowed to perform the functions of a research analyst and had recently been promoted to Assistant Manager.

Poggi's EEOC charge was referred to the New York State Department of Human Rights ("SDHR") for processing, including investigation and potential conciliation. Mitsubishi was notified of this referral in December 1985. By letter dated January 2, 1986, the SDHR urged the bank to pursue conciliation and settlement with respect to Poggi's claim and offered assistance toward this end. The bank was also requested, if it was not interested in exploring conciliation, to produce documentation and to submit a position statement addressing Poggi's allegations. The SDHR's request for a position statement and other information focused on Poggi's individual complaint of discrimination and did not refer to the possibility of widespread discriminatory practices. The bank responded to these requests in February 1986.

On September 16, 1986, Poggi was interviewed by a member of the staff of the SDHR. According to an inter-office memorandum summarizing the interview, Poggi stated that during her employment at the bank, "she observed that all White Americans male and female were assigned to tasks that did not train them for executive positions," while two Asians performed the duties of junior officer. Poggi further reported that "all the Asians performed responsible functions," and that she believed that management denied giving her and the other White Americans specific duties because they were not Japanese. There is no evidence that this report was ever conveyed to defendant until after plaintiffs filed the section 1981 case in March 1988, when the report was made available through the discovery process.

*Poggi's Amended Charge*

On or about May 17, 1988, Poggi filed an "amendment" to her original December 3, 1985 EEOC charge. Poggi amended paragraph III of her original charge to include race and color, in addition to sex and national origin, as the bases for the alleged discrimination. Poggi also added a new paragraph IV:

"IV. Since the date of my termination from employment and continuing to the date hereof, the Respondent has denied promotional opportunities and equal terms and conditions of employment to other non-oriental and non-Japanese employees, including Oneida Adames, Mirsada Krlic and Nancy Farinola.

I allege that the Respondent's mistreatment of its non-oriental and non-Japanese employees constitutes a pattern and practice and, accordingly, I hereby amend my Charge against the Respondent to allege discrimination on the bases of race and ethnic origin characteristics on behalf of all Bank employees similarly situated."

In July 1988, both parties stipulated to have the SDHR suspend its investigation into Poggi's two discrimination charges due to the pendency of the federal civil rights action brought by Poggi and three former employees under section 1981. The stipulation preserved the bank's right to object to Poggi's amended claim as time-barred as well as Poggi's right to request the EEOC

to issue a notice of right to sue with respect to the original or amended charge.

In a letter dated September 9, 1988, the SDHR informed counsel that the requested stay was granted and that there would be no further investigation. The SDHR further stated that the addition of race, color, and national origin claims in Poggi's amended complaint was proper because it added charges related to the original complaint. However, the SDHR informed the parties that the paragraph of the amended complaint that described events occurring since the filing of the original complaint was not proper: "In this situation, the complainant should have filed a separate complaint. We have kept the amendment but will not pursue improper allegations."

In March 1989, the SDHR informed the parties that, since only claims of discrimination on the basis of age were entitled to an automatic stay, the investigation into the Poggi matter would continue after all.

*Krlic's Charge*

Plaintiff Krlic was hired by Mitsubishi on August 4, 1986. On October 1, 1987, Krlic notified the bank in writing that she was resigning her position effective October 14, 1987. On August 2, 1988, Krlic filed a claim of discrimination with the EEOC, which apparently referred it to the SDHR.[1] The charge states that, although Krlic was hired as a credit analyst, she was compelled to do the work of a lower-level administrative assistant. Krlic claimed that despite her qualifications she was consistently denied any opportunity for promotion, as well as job perquisites, and that her performance evaluation prevented promotion. Because of such treatment, Krlic was forced to resign.

Plaintiff further alleged that "the Bank had engaged in a similar pattern and practice of mistreatment denying promotion opportunities, perquisites, and comparable performance evaluation to other non-Japanese and non-oriental employees. There also exists at the bank a racially deprecatory work environment against non-Japanese and non-oriental employees." Claiming that such practices were widespread throughout the bank's U.S. offices, Krlic filed her charge on behalf of all other similarly situated bank employees of non-oriental and non-Japanese descent, ancestry, and ethnic characteristics. The charge also made reference to Poggi's original and amended EEOC complaints.

The title VII action was commenced by plaintiffs on October 6, 1989. Both plaintiffs Krlic and Poggi requested the EEOC to issue notices of right to sue before their agency charges were fully processed and before any findings had been made by the SDHR or EEOC. Plaintiffs also requested a dismissal of the proceedings before the SDHR for administrative convenience in order to join their state law claims as pendent claims to the title VII complaint.

On December 26, 1989, the SDHR issued orders of dismissal for the claims of both Poggi and Krlic. These orders stated that the complaints had been dismissed on the grounds of administrative convenience in that the matters were presently being litigated in federal court, where all the issues concerning the questions of national origin, sex, race, and color discrimination could be resolved. The orders expressly pointed out that in this situation the plaintiffs maintained the same right to file suit (on their Human Rights claims) as if no complaints had been originally filed.

## DISCUSSION

Defendant asserts that the charges of discrimination filed with the EEOC or SDHR by plaintiffs Poggi and Krlic were either untimely or limited to individual claims and thus cannot provide a basis for the broader, class-wide title VII claims made in this federal action. Plaintiffs respond that under a number of theories the EEOC claims of either of these plaintiffs support the present federal court action.

---

**1.** Although the EEOC records indicate that Krlic's complaint was first sent to the SDHR, plaintiffs' attorneys have furnished a copy of an August 2, 1988 cover letter to the EEOC advising them of an attached discrimination charge on behalf of Krlic.

## I. Title VII Filing Requirements

Title VII, 42 U.S.C. § 2000e–5(e), requires that all claims for employment discrimination be filed with the EEOC within 180 days of the date the alleged unlawful employment discrimination occurred. An exception to this requirement allows local agencies in states which have them, known as deferral states, the chance to review discrimination claims and act on them before the EEOC proceeds. In such cases the statute requires the claimant to file with the EEOC within a total of 300 days, or thirty days after receiving notice that the state agency has terminated proceedings, whichever is earlier. A separate provision of law states that a claimant may not file a complaint with the EEOC in deferral states until sixty days after the proceedings have been commenced by the appropriate state agency unless the state has terminated its proceedings in less than the allotted sixty days. 42 U.S.C. § 2000e–5(c). If a claim is filed first with the EEOC, it will be deferred to the state agency for action for a period of sixty days. *Id.* § 2000e–5(d); *see generally Sharpe v. American Express Co.*, 689 F.Supp. 294, 296–97 (S.D.N.Y.1988).

The Supreme Court has interpreted this labyrinth of regulations to mean that a claimant in deferral states has 240 days within which to file with the state discrimination agency in order to preserve federal jurisdiction. *Mohasco Corp. v. Silver*, 447 U.S. 807, 825–26, 100 S.Ct. 2486, 2496–97, 65 L.Ed.2d 532 (1980). Since New York is a deferral state, plaintiffs Poggi and Krlic had 240 days from the last date of alleged discrimination within which to file with the New York State Department of Human Rights (or the EEOC, which would defer to the state agency). This statutory limitation period generally commences at the time the discriminatory act occurs and not necessarily when the injured employee resigns or is discharged. *Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980).

Krlic's charge to the EEOC was filed 306 days after she notified the bank of her impending resignation. Because the relevant time period is measured from the date the employee gave notice of her intent to resign and not her last day on the job, Krlic's complaint was untimely. *See, e.g., Lowell v. Glidden–Durkee*, 529 F.Supp. 17, 19–20 (N.D.Ill.1981). Even if the timeliness of Krlic's filing were measured from her last day of work, the charge was still untimely as it was filed more than 240 days after Krlic left Mitsubishi. Plaintiffs concede that Krlic failed to file within 240 days of the initially complained of discrimination but assert her complaint is still timely under the continuing violations doctrine, discussed *infra*. For its part, defendant concedes that the original EEOC complaint that Poggi filed on the day of her resignation was timely, but only as to her own claims.

## II. Poggi's Original Complaint

As a general rule, title VII must be interpreted liberally to effectuate its purpose of eradicating employment discrimination. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982). Fairness, and not excessive technicality, must guide the consideration of title VII actions. *Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972). In accordance with this principle, the Supreme Court has established that title VII filing requirements are not jurisdictional prerequisites and may be waived or tolled where equity requires. *Zipes, supra*, 455 U.S. at 398, 102 S.Ct. at 1135. However, the courts must give substance to the underlying purpose of the filing procedures to convey prompt notice to the employer, thereby encouraging conciliation wherever possible. *Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir.1986), quoting *Zipes*, 455 U.S. at 398, 102 S.Ct. at 1135.

Defendant asserts that Poggi's original complaint cannot support the subsequent class action suit under title VII, given its failure to meet the requirements of the "single filing" rule. In *Foster v. Gueory*, 655 F.2d 1319 (D.C.Cir.1981), the D.C. Circuit announced that the purposes of the filing procedure were satisfied when the

allegations of discrimination made by non-filing parties were sufficiently similar to the EEOC charge filed by one plaintiff. In *Snell v. Suffolk County, supra,* the Second Circuit. adopted this "single filing" rule:

"[W]here one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims 'aris[e] out of similar discriminatory treatment in the same time frame.' *Ezell v. Mobile Housing Board,* 709 F.2d 1376, 1381 (11th Cir.1983). The rule thereby avoids unnecessary repetition of EEOC filings where the initial complaint went unaddressed. This presupposes, of course, that the subsequent claims are sufficiently similar to the original complaint and the employer received adequate notice and an opportunity for conciliation."

782 F.2d at 1100.

In *Snell,* four correction officers filed identical EEOC complaints charging that Suffolk County maintained discriminatory recruitment, hiring, and promotion practices toward racial minorities. More than a year later the four men, together with a number of non-filing plaintiffs, filed a title VII suit alleging a pattern and practice of race discrimination. The court allowed the addition of these non-filing plaintiffs after determining that the title VII claims arose out of virtually identical circumstances as the EEOC complaints and that all the relevant incidents were of a similar nature and occurred within a three-year period. *Id.* at 1101. "Moreover, the EEOC filings put Suffolk County on notice of 'discrimination like or reasonably growing out of such allegations.' " *Id.,* quoting *Caldwell v. National Ass'n of Home Builders,* 771 F.2d 1051, 1054 (7th Cir.1985).

▪ In contrast, plaintiffs' class action suit cannot be said to arise out of discriminatory treatment sufficiently similar to that alleged in Poggi's original EEOC complaint. Poggi's complaint charged that she had been discriminated against on the basis of her sex and national origin and that she had been denied the opportunity to perform as a research analyst, as well as to advance, as a result of such discrimination. In contrast, plaintiffs' title VII suit alleges a pattern and practice of racial discrimination that challenges the bank's transfer, training and assignment policies, inequitable employment benefits, and complains of a hostile work environment. Moreover, the complaint alleges discrimination on a much more extensive time frame than the fifteen months between September 1984 and December 1985 during which Poggi was employed by the bank. As such, Poggi's original EEOC filing did not put defendant on notice of "discrimination like or reasonably growing out of such allegations." *Snell,* 782 F.2d at 1101.[2] *See also Foster v. Gueory, supra,* 655 F.2d at 1322; *Ezell v. Mobile Housing Board,* 709 F.2d 1376, 1381 (11th Cir.1983).

### III. *Poggi's Amended Complaint*

Practically conceding that Poggi's original EEOC complaint cannot support the subsequent class action, plaintiffs assert that Poggi's amended complaint in May 1988 satisfies the title VII exhaustion and notice requirements. Defendant responds that the amended EEOC charge is both untimely and impermissibly asserts claims that go far beyond the scope of her original December 1985 charge. Defendant further argues that, even if the amended charge is accepted as a permissible amendment, it does not support all of the broad claims made in the title VII complaint.

#### 1. Was the Complaint Properly Amended?

The EEOC regulations specifically provide that a complaint can be amended under certain circumstances:

"A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendment alleging additional acts

---

**2.** As noted earlier, there is also no evidence that the SDHR ever notified the bank of its September 1986 interview with Poggi, in which she referred to class-wide discrimination against white Americans.

which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."

29 C.F.R. § 1601.12(b) (1989).

As noted above, the Supreme Court has instructed that a technical reading of title VII requirements is "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Zipes v. TWA, supra,* 455 U.S. at 397, 102 S.Ct. at 1134, quoting *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). The Second Circuit has, accordingly, embraced a "flexible approach" in interpreting title VII complaints, stating that "Title VII claimants should not be held to the precision of a code pleader." *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).[3] Other courts have also liberally construed a plaintiff's original complaint in recognition of the fact that the original EEOC charge is most often made without the assistance of counsel. *See, e.g., Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 965 (3d Cir.1978).

There appears to be little dispute that, by adding race and color as bases for discrimination, Poggi's amended complaint properly "amplified" her original complaint alleging only national origin discrimination. *See, e.g., Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1402–03 (S.D.N.Y.1985) (allegation of national origin discrimination reasonably expected to lead to racial discrimination claim). Poggi's new paragraph IV, in which she now alleges a pattern and practice of race discrimination, is more controversial. It is questionable whether Poggi's allegations of discrimination affecting other employees *after* her own departure are sufficiently related to her original complaint. However, the amendment, fairly interpreted, alleges a

pattern and practice of discrimination in existence at the time of Poggi's employment, as well as thereafter. As such, this part of the amended charge is permissible.

In *Washington v. Kroger,* 671 F.2d 1072 (8th Cir.1982), plaintiff first filed an EEOC complaint while she was employed, alleging that she was the victim of wage discrimination on the account of her sex. Three months later she claimed racial discrimination to a state agency, and two years after her termination she filed again with the EEOC, claiming she had been denied training and ultimately discharged on account of her race. The Eighth Circuit ruled that plaintiff's second EEOC charge was sufficiently related and grew out of her initial complaint. As that court explained:

"The fact that the second complaint filed with the EEOC alleges a basis for discrimination different from that alleged in the first EEOC charge is not dispositive here, where the aggrieved person is a non-lawyer who may be unaware of the true basis for the allegedly discriminatory acts until an investigation has been made."

671 F.2d at 1076; *see also Hicks v. ABT Associates, supra,* 572 F.2d 960 (allowing amendment that claimed sex discrimination, where it allegedly arose from same acts supporting original claim of race discrimination).

While some courts have not permitted plaintiffs such broad latitude in adding separate bases for the alleged discrimination, *see, e.g., EEOC v. Mississippi College,* 626 F.2d 477, 483–84 (5th Cir.1980) (could not add race discrimination to sex discrimination claim); *Campbell v. A.C. Petersen Farms, Inc.,* 69 F.R.D. 457, 461 (D.Conn. 1975) (could not add sex discrimination to race discrimination claim), the majority of courts have allowed plaintiffs considerable latitude in fleshing out the factual circumstances surrounding their initial complaint.

---

3. In *Silver,* the court found the complaint properly amended where the plaintiff supplemented his "rough, incomplete and hastily drafted" complaint by sending a letter to the district director of the EEOC clearly charging his employer with additional unlawful behavior. 602

F.2d at 1090–91; *see also Kammer v. National Broadcasting Co.,* 38 Empl.Prac.Dec. (CCH) ¶ 35,764, 1984 WL 1438 (S.D.N.Y.1984) (complaint amplified by subsequent proceedings and letter to EEOC).

Thus, in *EEOC v. Mississippi College, supra,* 626 F.2d 477, plaintiff's original EEOC charge alleged she had failed to win a promotion on the basis of her sex. Her amended charge alleged that her employer had discriminated against females as a class with respect to segregated job classifications, failure to promote, failure to recruit, and pay. Although the court did not allow the addition of new racial claims, the new class-wide sex discrimination claims were accepted.

Similarly, in *Campbell, supra,* 69 F.R.D. 457, where the initial complaint alleged that plaintiff's demotion had been racially motivated, the court permitted a broader amendment that alleged racial harassment, while in *Cobb v. Stringer,* 850 F.2d 356 (8th Cir.1988), the court permitted a plaintiff alleging sex discrimination to twice amend and expand her allegations.

The decision in *Hornsby v. Conoco, Inc.,* 777 F.2d 243 (5th Cir.1985), is not persuasive. The *Hornsby* court refused to allow a plaintiff who initially filed a sex discrimination claim to amend by adding a sexual harassment claim, stating that it was "independent" of her initial allegations. *Id.* at 247. First, Poggi's amendment alleging that her own failure to win promotion was part of a larger pattern and practice appears sufficiently related and, therefore, not "independent" from her original charge. Second, the *Hornsby* court's indication that amendments may only be allowed to cure "technical defects or omissions," *id.,* is at odds with both EEOC regulations and prevailing case law.[4]

█ The fact that the New York State Human Rights Division rejected that part of Poggi's amended complaint that alleged a pattern and practice of discrimination is also not dispositive. In the context of EEOC actions, most courts have refused to penalize a plaintiff where the EEOC's investigation is unreasonably narrow or improperly conducted or where there is a genuine question as to whether the agency improperly rejected an amendment. *See,*

*e.g., Hicks v. ABT Associates, supra,* 572 F.2d at 966; *Cobb v. Stringer, supra,* 850 F.2d at 360; *Mckee v. McDonnell Douglas Technical Services Co.,* 700 F.2d 260, 263–64 (5th Cir.1983). In *Weise v. Syracuse University,* 522 F.2d 397, 413 (2d Cir.1975), this Circuit determined that, while the EEOC's findings are ordinarily entitled to great weight, a district court was not bound to accept the EEOC's ruling that a filing was untimely where the EEOC had misread the charge. Thus, even were this Court to accord the same discretion to the state agency, where Poggi's complaint fairly indicates she was permissibly expanding the scope of her former complaint (and not just adding subsequent claims by other plaintiffs, as the state agency interpreted it), this Court should accept the amended charge.

The lack of apparent prejudice on the part of the bank provides further support for expanding the scope of the civil action beyond that of the SDHR investigation. *See, e.g., Fesel v. Mason Home of Delaware, Inc.,* 428 F.Supp. 573, 576–77 (D.Del. 1977); *Hicks, supra,* 572 F.2d at 966. The bank was aware of the contents of Poggi's May 1988 amendment shortly after it was filed. Moreover, the filing of plaintiff's class action section 1981 suit clearly put defendant on notice of the class-wide nature of the allegations. Finally, the fact that the bank in July 1988 stipulated to have the SDHR suspend its investigation into both of Poggi's charges due to the pendency of the federal action clearly indicates that neither party was interested in the sort of investigation and conciliation the filing process is intended to foster. *Stewart v. United States I.N.S.,* 762 F.2d 193, 198 (2d Cir.1985).

### 2. Does the Amended Charge Support the Title VII Suit?

█ The bank next asserts that, even if the Court accepts Poggi's agency charge as amended, the amended complaint does not support all the claims subsequently made

---

**4.** The Court is also not persuaded by defendant's reliance on cases discussing the requirement that a claim made in a title VII suit must be reasonably related to an EEOC claim, discussed *infra.*

in the title VII suit. Title VII claims that have not been presented to or investigated by an administrative agency and that are not within the scope of the EEOC investigation which reasonably could be expected to grow out of the administrative charge are properly subject to dismissal for lack of subject matter jurisdiction. *See, e.g., Grant v. Morgan Guaranty Trust Co. of New York*, 548 F.Supp. 1189, 1191 (S.D.N.Y.1982). In this Circuit it is now established that district courts may assume jurisdiction over any claim "reasonably related" to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim. *Stewart v. United States I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984). The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action prior to the initiation of a suit. *Stewart, supra,* 762 F.2d at 198.

 I find that there is a sufficient relation between Poggi's amended complaint and the subsequent title VII action to provide a basis for jurisdiction over this action. Defendant correctly points out that the amended charge does not specifically refer to the bank's allegedly discriminatory evaluation, transfer, training and assignment policy, its employment benefits and perquisites, or the hostile environment claim. However, Poggi's amended charge alleging a pattern and practice of discrimination concerning the "terms and conditions" of employment fairly encompasses all of these allegations. Moreover, the specific allegations in the title VII complaint can reasonably be expected to have emerged out of an agency investigation of Poggi's amended charge. *Silver v. Mohasco Corp., supra,* 602 F.2d at 1090. Poggi's amended charge is thus distinguishable from that of the plaintiff in *Grant v. Morgan Guaranty, supra,* 548 F.Supp. at 1191–92, where an original administrative

charge alleging one plaintiff's denial of promotion did not support a broad-based class action suit.[5]

Finally, even if the class action claims were set forth fully in Poggi's amended charge, there is little reason to believe they would have been settled extra-judicially through the efforts of the state agency. As discussed above, the parties had made no progress in settling the Poggi claims and stipulated to defer further agency investigation pending the federal suit. Where the underlying purpose of the exhaustion requirements to promote conciliation is not being given effect, the courts of this Circuit have been reluctant to bar a title VII action. *See Weise v. Syracuse University, supra,* 522 F.2d at 412; *Snell, supra,* 782 F.2d at 1101.

## IV. *Continuing Violation Doctrine: Krlic's Charge*

 Even if Poggi's charge were not properly amended, or, as amended, does not support the Title VII suit, Krlic's EEOC charge supports the action under the continuing violation doctrine. As previously noted, Krlic's EEOC charge was not filed within 240 days of her decision to leave the bank or her actual departure and is thus not timely under the traditional analysis. However, the claim may still be timely if a plaintiff alleges a continuing violation extending before or beyond the period that the original claimant first alleged discrimination. As the D.C. Circuit Court explained in *Valentino v. United States Postal Service,* 674 F.2d 56 (D.C.Cir. 1982):

"To establish a continuing violation (plaintiff must) show a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period."

674 F.2d at 65; *see also Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989); *LaBeach v. Nestle Co.,* 658 F.Supp.

---

5. However, as defendant correctly asserts, the *Grant* rationale would bar a class action suit based solely on Poggi's *original* charge. *See also Bennett v. New York City Dept. of Corrections,*

705 F.Supp. 979 (S.D.N.Y.1989) (failure to train claim not encompassed by sexual harassment charge).

676, 687 (S.D.N.Y.1987), quoting *Valentino.*

To fit within the continuing violation doctrine, plaintiffs must show either (1) a series of related acts or (2) a continuing discriminatory system. With respect to the first category, plaintiffs argue that Poggi and Krlic could have theoretically reapplied for bank employment at a date following their respective resignations and been subject to the same discriminatory practices. This speculative claim is clearly not sufficient to show a continuing violation. As the Supreme Court has noted, alleging a present effect of past discrimination is not sufficient to establish an ongoing violation. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Moreover, "[c]ompleted acts such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a continuing nature," *Malarkey v. Texaco, Inc.,* 559 F.Supp. 117, 121 (S.D.N.Y.1982); *see also Gilliard v. N.Y. Public Library,* 597 F.Supp. 1069, 1077 (S.D.N.Y.1984).

However, with respect to the second category, Krlic's EEOC charge specifically alleged a "pattern and practice of mistreatment denying promotion opportunities, perquisites and comparable performance evaluations" for all non-oriental employees. The charge alleged that these conditions, as well as a racially deprecatory work environment, continued to exist. Under this "discriminatory system" arm of the continuing violation doctrine, "no discrete act of discrimination, i.e., a hiring, a firing, a refusal to promote, within the charge-filing period is required. This is because the courts have viewed each day during which the discriminatory system exists as a separate violation of Title VII." *Mayfield v. Meese,* 669 F.Supp. 1123, 1128 (D.D.C.1987); *see also Association Against Discrimination in Employment, Inc., v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981); *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1443 (9th Cir.1984).

Because both Krlic's claim and the subsequent title VII action alleges a continuing pattern of discrimination, there is no relevant date on which the cause of action accrued, and the claim is not barred by the statute of limitations. *Gilliard, supra,* 597 F.Supp. at 1078–79. Moreover, since Krlic's EEOC charge alleges a broad pattern and practice of discrimination that closely tracks the title VII claims, it clearly supports the class-wide suit brought on behalf of non-filing plaintiffs under the *Snell* single-filing doctrine, *see* discussion, *supra.*[6]

### V. *Dismissal of State Law Claims*

Defendant also asserts that plaintiffs' pendent civil rights claims, asserted under the New York State Human Rights Law, Executive Law § 297, must be dismissed since, if plaintiffs' title VII claims were to be dismissed at this point prior to trial, there would be no basis for a continued exercise of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The bank further argues, however, that, even if the Court maintains the title VII suit, the state law claims are now barred by the doctrine of election of remedies.

Executive Law § 297[9] provides that a person claiming to be aggrieved by an unlawful discriminatory practice may seek relief from either "any court of appropriate jurisdiction" or from the SDHR or any local commission on human rights, but not both. N.Y.Exec.L. § 297[9] (McKinneys 1982); *Scott v. Carter–Wallace, Inc.,* 541 N.Y.S.2d 780, 781 (1st Dep't 1989). However, an exception to the above rule exists "where the [human rights] division has dismissed such complaint on the grounds of administrative convenience," in which case "such person shall maintain all rights to bring suit as if no complaint had been filed." N.Y.Exec.L. § 297[9]; *Scott, supra,* 541 N.Y.S.2d at 781.

---

**6.** Given the apparent sufficiency of either Poggi's amended EEOC claim or Krlic's EEOC charge to support the title VII action under the principles discussed above, plaintiffs' less plausible arguments are not addressed.

Since the SDHR issued orders of dismissal for the claims of both Poggi and Krlic on the grounds of administrative convenience, plaintiffs have a well-established right to pursue these claims in either state or federal court. *See, e.g., Miller v. IT & T Corp.*, 153 A.D.2d 925, 545 N.Y.S.2d 732, 734 (2d Dep't 1989); *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 504–06 (S.D.N.Y.1989). Defendant claims, however, that a recent decision by the New York Court of Appeals in *Marine Midland Bank v. N.Y. State Div. of Human Rights*, 75 N.Y.2d 240, 552 N.Y.S.2d 65, 551 N.E.2d 558 (1989), reverses this precedent and establishes that, where, as here, the state agency has granted a dismissal in order to permit a plaintiff to pursue the claim in court, such subsequent action must be barred.

In *Marine Midland Bank*, the court reviewed the decision by the State Division of Human Rights to dismiss a case for administrative convenience *after* the agency had already determined the complaint was time-barred because it was not filed within one year of the accrual of the cause of action. The court recognized that "[d]ismissals for 'administrative convenience' are within the agency's 'unreviewable discretion'" and that the legislature conferred this discretionary authority upon the agency to "permit the more efficient administration of the Division's affairs." *Id.* 552 N.Y.S.2d at 66, 551 N.E.2d at 559. However, the court noted that "[a]dministrative convenience dismissals are subject to judicial review to the extent that they are purely arbitrary, i.e., to the extent that they contravene or threaten to contravene a statute, constitutional right or administrative regulation." *Id.* 552 N.Y.S.2d at 67, 551 N.E.2d at 560, citing *Matter of Pan Am. World Airways v. N.Y. State Human Rights Appeal Bd.*, 61 N.Y.2d 542, 475 N.Y.S.2d 256, 463 N.E.2d 597 (1984).

The court went on to rule that the agency could not employ its discretionary authority to contravene the clear mandate of the Executive Law's statute of limitations which, in light of the agency's own findings that the filing had been untimely, now mandated dismissal on grounds other than administrative convenience. As the Court of Appeals explained, "where an administrative convenience dismissal is contrary to the express requirements of a statute, the Division's action cannot be justified by reference to the more broadly written regulations promulgated by the agency itself." *Id.* 552 N.Y.S.2d at 67, 551 N.E.2d at 560.

The ruling in *Marine Midland* is both factually and legally distinguishable from the present case. First, that case involved a direct challenge in state court, pursuant to Executive Law § 298, to the SDHR's dismissal. In contrast, this Court does not possess the jurisdictional authority to review Division orders and to reverse dismissals made for reasons of administrative convenience. *Giuntoli v. Garvin, supra*, 726 F.Supp. at 504; *Martel v. Dean Witter Reynolds, Inc.*, 738 F.Supp. 53, 56 (E.D.N.Y.1990) (Raggi, J.). Defendant has informed the Court that it has moved in state court pursuant to section 298 to invalidate the administrative dismissals. However, unless and until the state court invalidates the administrative dismissals, this Court must assume that the SDHR's decision to grant administrative dismissals was correct and, pursuant to the express terms of section 297(9), permit plaintiffs to pursue their state claims in this action.

The Court further finds that, even were this challenge to the SDHR's actions properly before it, the ruling in *Marine Midland* does not support defendant's position. Unlike the *Marine Midland* case, there is no evidence that the state agency has determined that the charges brought by Poggi or Krlic were untimely under New York law. Second, there is no evidence that the agency has determined it lacks jurisdiction or has concluded there is no reasonable basis for the charges, in which case dismissal on these grounds would also bar subsequent judicial action. *Marine Midland*, 552 N.Y.S.2d at 66–67, 551 N.E.2d at 559–560. Finally, defendants have not pointed to any other regulatory or statutory provision or constitutional law that the agency's action has contravened. The *Marine Midland* ruling does not support the proposition that all administrative convenience dis-

 

missals granted for the purpose of allowing a subsequent suit must now be barred. Indeed, the Court of Appeals clearly articulated the agency's broad discretionary authority to issue such dismissals, subject only to reversals where agency action is "purely arbitrary." *Id.* 552 N.Y.S.2d at 67, 551 N.E.2d at 560. Since *Marine Midland* offers no authority to overrule the well-established rule allowing administrative dismissals under the present circumstances, defendant's motion to dismiss the state claims is also denied.[7]

For the reasons stated above, defendant's motion to dismiss the state claims and the title VII claims is denied.

SO ORDERED.

---

**7.** Given its determination on this issue, the Court does not address plaintiffs' separate contention that, even in the absence of the dismissals for administrative convenience, this Court could exert pendent jurisdiction over the state claims.