Anthony **EDMONSTON**, Plaintiff,

v.

**MGM GRAND AIR, INC.,** Nicole **Lubniewski,** William **Miller,** Carlos **Granado,** and Richard **Cordero,** Defendants.

No. CV–92–461.

United States District Court,
E.D. New York.

Dec. 11, 1992.

---

**5.** Plaintiff attaches a copy of this statement to    her reply on this motion.

Anthony M. Grandinette, Mineola, NY, for plaintiff.

Kenneth R. Puhala, Jones, Day, Reavis & Pogue, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This action, which seeks reinstatement, compensatory and punitive damages, and an injunction, arises out of plaintiff's employment with defendant MGM Grand Air ("MGM"). Before describing and evaluating the three motions currently at issue, this court will set forth the case's procedural posture and the various factual allegations that lie at the action's source.

Plaintiff alleges that beginning in August of 1990, his newly-appointed supervisor, defendant Nicole Lubniewski, along with his co-workers at MGM, defendants William Miller, Carlos Granado, and Richard Cordero, subjected plaintiff to a series of "racial slurs, jokes, epithets, [and] demeaning and degrading comments" which caused him physical pain in the form of a gastric ulcer. (Complaint ¶¶ 23–28) On September 18, 1990, the individual defendants allegedly exacerbated plaintiff's suffering by insisting that he help move heavy

equipment—a file cabinet—immediately upon his return from treatment; the plaintiff claims, as well, that defendants accompanied their insistence with racial epithets. (Complaint ¶¶ 28–33) Plaintiff also charges that defendants pushed the cabinet on top of him and subsequently sat on the cabinet under which he was pinned. (Complaint ¶¶ 34–35)

Plaintiff pursued a criminal action against his coworkers in New York State criminal court, Queens County, in September of 1991. Cordero, Granado and Miller were each charged with three class A misdemeanors.[1] On October 8, 1992, the criminal charges were adjourned in contemplation of dismissal ("ACD"). As part of the ACD, Miller, Cordero, and Granado provided brief written statements to the criminal court and agreed to participate in a sensitivity program.

On October 9, 1990, prior to filing the criminal charges, plaintiff brought a complaint before the Equal Employment Opportunity Commission (EEOC). (Defendants' 3(g) Statement, Exh. C) His specific EEOC claim complained that MGM unlawfully denied him a promotion on July 27, 1990, an allegation that does not appear in the original federal complaint in this action but which plaintiff now seeks to include through an amended complaint. The EEOC dismissed plaintiff's failure-to-promote charge on August 5, 1991, at which time the Commission issued a "right-to-sue" letter requiring plaintiff to bring suit within 90 days. (Defendants' 3(g) Statement, Exh. D) He did not do so.

Plaintiff's present action states Title VII claims against MGM arising out of the airline's responsibility for the actions of its employees. He recites the corporate employer's failure to take action against the offenses of which it was or should have been aware and its failure to establish a policy regarding harassment. Plaintiff also asserts claims under 42 U.S.C. § 1981 arising from the corporate defendant's failure to provide a work environment free of racially hostile behavior which thereby caused plaintiff emotional harm and constituted constructive discharge. Finally, plaintiff asserts various pendent state claims against both the corporate and individual defendants, including breach of employment contract, tortious interference with contract, and assault.

There are several motions currently at issue. First, defendants have moved for summary judgment, claiming (in brief): (1) that plaintiff never met the statutory prerequisites of Title VII because he failed to apply to the EEOC before bringing the claims now before this court; (2) that the 1991 Civil Rights Act does not apply retroactively to this case and therefore the governing construction of Section 1981 bars recovery because plaintiff alleges that he was racially harassed only after he was hired; and (3) that since all the federal claims must be dismissed, the court lacks jurisdiction over the remaining state tort claims.

The second motion in essence responds to the first. Plaintiff moves for leave to amend his complaint, pursuant to Rule 15(a), to allege diversity jurisdiction over the state law claims. In addition, plaintiff seeks leave to plead an additional claim under Section 1981—namely denial of promotion as a result of racial discrimination. Presumably, the reason for the latter allegation is two-fold: (1) since plaintiff *did* apply to the EEOC on *this* Title VII claim, he satisfies the pre-requisite about which the defendants complain; and (2) even if the 1991 Civil Rights Act does not apply retroactively, failure to promote in certain circumstances is covered by the former civil rights act.

The third and final motion related to this action is plaintiff's motion to disqualify defendants' lawyers—Jones Day Reavis and Pogue. Plaintiff asserts that the representation of both the individual and corporate defendants in this case would lead the firm to violate Canon 5 of the Code of Professional Responsibility.

---

1. Each defendant was charged with unlawful imprisonment in the second degree (penal law § 135.05); assault in the third degree (penal law § 120.00); and aggravated harassment in the second degree (penal law § 240.30(3)).

## DISCUSSION

### I. *Plaintiff's Motion to Amend the Complaint*

Plaintiff moves to amend his complaint in two specific ways: to allege diversity of citizenship as the basis for jurisdiction over claims asserted in the original complaint as pendent state claims; and to allege a second incident of discrimination for which plaintiff filed a claim with the EEOC and received a right-to-sue letter.

The denial or grant of a motion to amend is within the discretion of the district court, *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2d Cir.1983) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)), and leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In *Foman*, the Supreme Court instructed that leave to amend should be liberally granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. This court turns now to each of the proposed amendments.

### A. *Diversity*

■ Plaintiff wishes to amend his complaint to assert a separate jurisdictional basis—diversity pursuant to 28 U.S.C. § 1332—over the now-pendent state law claims. He points out that the original complaint provided the groundwork for such a claim because it stated: that plaintiff is a citizen of New York; that MGM is incorporated in Delaware; and that the amount in controversy is satisfied. All of these assertions are true. Plaintiff, however, overlooks the absence of an essential allegation: the citizenships of the individual co-defendants that are necessary for complete diversity. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir.1992) ("28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants").[2]

Accordingly, unless plaintiff means to dismiss his claims against the individual defendants or unless these parties are citizens of states other than New York, a claim of diversity jurisdiction is futile, and plaintiff's request to amend his complaint on this ground is hereby denied.

### B. *Failure to Promote*

■ Plaintiff also moves to amend his complaint to assert a failure-to-promote claim—the same claim brought before the EEOC. He wishes to assert this claim under 42 U.S.C. § 1981 and *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the leading case interpreting that statute. In order to state a cause of action under Section 1981, *Patterson* requires discriminatory "conduct at the initial formation of the contract" or "conduct which impairs the right to enforce contract obligations through the legal process." Discriminatory denials of promotion state a valid cause of action when the promotion denied "rises to the level of an opportunity for a new and distinct relation between employee and employer." *Id.* at 185, 109 S.Ct. at 2377; *see Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir.1990) (finding no new contract because there was "no significant change in duties or responsibilities"); *Sitgraves v. Allied Signal, Inc.*, 953 F.2d 570, 574 (9th Cir.1992) (holding changes in supervisory status relevant to determining whether promotion creates new and distinct relation under *Patterson*).

Plaintiff claims that the promotion denied him was a new supervisory position and that he is entitled to fact finding on this claim. *See Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370–72 (5th Cir.1992) (analyzing facts before finding no change in relationship despite promotion to supervisor). Although plaintiff presents no facts to counter the assertion that, while supervisory, this new position did not change the employment relationship, a motion to amend, as plaintiff aptly notes, is not the time to address the merits of the

---

**2.** Plaintiff also fails to provide the location of MGM's principal place of business, which also must be a state other than New York for diversity jurisdiction to apply. 28 U.S.C. § 1332(c)(1).

claim or defenses thereto. *Grogg v. General Motors Corp.*, 72 F.R.D. 523, 527 (S.D.N.Y.1976). On the other hand, even the very liberal rule of *Foman* provides that motions to amend should not be granted if that amendment would be futile and would thus require a defendant to litigate a meritless lawsuit. Based on the facts of this case, assuming that the position for which plaintiff applied created a new and distinct employment relationship, this court nevertheless finds plaintiff's proposed amendment to be futile.

The EEOC Determination discussing plaintiff's failure-to-promote claim explains that plaintiff applied for the supervisory role only one month after commencing employment with MGM. (Defendants' 3(g) Statement, Exh. D) While the Commission's investigation found that two white employees were in fact promoted over plaintiff, it also found that one of the white candidates had extensive experience in the field and the other candidate, whose experience was equivalent to plaintiff's, had seniority and therefore was promoted in accordance with company policy. (Defendants' 3(g) Statement, Exh. D) The Commission's investigation also revealed that plaintiff's Manager originally believed three supervisory positions were available and informed the three applicants—including plaintiff—that they would be promoted. The EEOC therefore concluded the following:

> The record disclosed that Charging Party was the only Black who applied for the Supervisory position. However, he had been selected as Supervisor when the Manager believed three positions were available. He would have been promoted regardless of his race. There is no evidence to conclude that Charging Party would not have been promoted had he

been more qualified than the successful candidate.

(Defendants' 3(g) Statement, Exh. D)

Plaintiff reminds this court that it is not bound by the EEOC's prior determination that no discrimination occurred. However, "the EEOC's findings are ordinarily entitled to great weight," *Weise v. Syracuse University*, 522 F.2d 397, 413 (2d Cir.1975); *see also Adames v. Mitsubishi Bank Ltd.*, 751 F.Supp. 1565, 1573 (E.D.N.Y.1990) (citing *Weise* for recognition that this Circuit ordinarily accords great weight to EEOC findings), and plaintiff has not provided any reason why this court should ignore the general rule. The facts recounted in the EEOC Determination indicate that even if plaintiff were allowed a second opportunity to assert his failure-to-promote claim, that claim would be futile. Accordingly, plaintiff's motion to amend his complaint to state a cause of action under 42 U.S.C. § 1981 for failure to promote is hereby denied.

## II. *Defendants' Motion for Summary Judgment*

The Supreme Court has established a clear test for whether an issue of fact is "genuine" for the purposes of summary judgment. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Court stated that a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Therefore, a court may grant summary judgment if the evidence is "merely colorable" or "not significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511. With these principles in mind, this court now turns to the issues involved in this case; in evaluating the parties' arguments, this court also bears in mind plaintiff's observation that all discovery in this action was stayed pending resolution of the summary judgment motion.[3]

---

**3.** Plaintiff claims that defendants have willfully failed to comply with federal automatic disclosure rules and that compliance would reveal material facts at issue in this case. For example, in his affidavit, plaintiff alleges that he knows of an internal investigation at MGM wherein two employees admitted discriminatory conduct (Plaintiff's Aff. ¶ 5) and were subsequently fired. However, as the remainder of this decision makes clear, evidence of this nature would not change the outcome of this motion. Therefore, plaintiff's request for a continuance under Rule 56(f) is hereby denied.

## A. *The Title VII Claim*

■ Title VII of the Civil Rights Act of 1964 prohibits discriminatory employment practices. Specifically, 42 U.S.C. § 2000e–2(a)(1) provides, in relevant part, that:

It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

Defendants contend that plaintiff's Title VII claim is barred by his failure to file a charge with the EEOC concerning the precise subject matter of this lawsuit—racial harassment and physical abuse. In addition, they assert that plaintiff's time to file such a charge has elapsed. 42 U.S.C. § 2000e–5(e)(1).[4] Finally, they assert that the charge that Edmonston did file with the EEOC against his employer in October of 1990, which alleges only that plaintiff was denied a promotion, does not cure this defect.[5]

Filing a timely charge with the EEOC and bringing suit within the statutory period is not a jurisdictional prerequisite to suit in federal court but rather "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). However, timely filing and receipt of a right-to-sue letter is a *statutory* pre-requisite to bringing a Title VII claim. *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 22–23 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). In other words, timely filing is a condition precedent to suit "and

is subject to waiver, estoppel, or tolling only upon a showing by plaintiff of a sufficient reason for such equitable modification." *Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F.Supp. 388, 392 (E.D.N.Y.1987) (opinion of this court citing cases).

As an initial matter, that plaintiff has filed other claims with the EEOC will not save a claim that he has not actually asserted with the agency. *See Ritzie v. City University of New York*, 703 F.Supp. 271, 278–79 (S.D.N.Y.1989) (dismissing portion of Title VII claim that plaintiff had not asserted in prior EEOC and NYSDHR proceedings). Although several courts in this circuit have allowed plaintiffs to bring Title VII claims not initially asserted in their original EEOC complaints, these courts have required similarity between the claims so as to put defendants "on notice of 'discrimination like or reasonably growing out of such allegations.'" *Adames v. Mitsubishi Bank Ltd.*, 751 F.Supp. 1565, 1571–73 (E.D.N.Y.1990) (*quoting Snell v. Suffolk County* 782 F.2d 1094, 1101 (2d Cir.1986)); *cf. Drummer v. DCI Contracting Corp.*, 772 F.Supp. 821, 825–28 (S.D.N.Y.1991) (finding untimely amendment of Title VII not to "relate back" to time of initial complaint since plaintiff's original claim of pregnancy discrimination not sufficiently similar to her religious discrimination claim; also barring religious harassment claims since EEOC could not reasonably have been expected to investigate these claims as outgrowth of original allegations). Even construing plaintiff's failure-to-promote claim broadly and flexibly, *see Adames*, 751 F.Supp. at 1572, the facts and circumstances surrounding the harassment claim plaintiff now asserts are quite dis-

---

**4.** 42 U.S.C. § 2000e–5(e)(1) provides in relevant part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after receiving notice that

the State or local agency has terminated the proceedings....

Edmonston was entitled to the 300–day period since New York is a deferral state under 42 U.S.C. § 2000e–5(c) and (e)(1).

**5.** The EEOC dismissed plaintiff's failure-to-promote charge and issued a right-to-sue letter on August 5, 1991. Pursuant to 42 U.S.C. § 2000e–5(f)(1), plaintiff had 90 days from that date to bring a federal action on his claim and failed to do so within the requisite time period.

tinct; accordingly, this court finds that filing of charges on the former does not relieve plaintiff from having to file an EEOC complaint on the latter.

■ Plaintiff however argues that his case raises issues of material fact going to the question of whether the doctrines of tolling or estoppel apply and bar defendants from asserting a statute of limitations defense.[6] Relying on this court's opinion in *Hladki*, 652 F.Supp. at 393, plaintiff claims that he is entitled to equitable modification for two reasons: first, he argues that he was prevented "in some extraordinary way" from asserting his rights; and, second, he argues that the EEOC incorrectly refused to issue a right to sue letter. Both of these arguments rest on plaintiff's assertion that during his meeting with an officer from the EEOC, he was misled into believing that only his failure-to-promote claim presented an appropriate question for the Commission's consideration. Affidavits submitted by plaintiff also allude to defendants having affirmatively lulled plaintiff into abandoning his claims; although plaintiff's brief does not deal with this issue directly, this court will address the allegation below.

Plaintiff claims that he attempted to complain of harassment and assault by MGM employees to the EEOC in October of 1990 but was advised by an intake officer that the Commission could process only the charges related to his promotion; the harassment and assault, the EEOC officer allegedly said, were criminal matters not within the EEOC's jurisdiction. (Edmonston Aff. ¶¶ 11–12)[7] Essentially, plaintiff is making an argument that this court should toll any applicable statute of limita-

tions because plaintiff lacked knowledge of his cause of action. The Second Circuit has explained the doctrine of equitable tolling in the following manner:

"The essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985), *quoting Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 113 (D.Conn.1978). The doctrine, however, is equitable in nature and will be applied, for example, when an employer's misleading conduct is responsible for the employee's unawareness of his cause of action. *Cerbone, supra*, 768 F.2d at 49–50. Therefore, when an employer's conduct is "extraordinary" enough, *Miller, supra*, 755 F.2d at 24, equitable tolling will defer the start of the EEOC filing period from the time of the discriminatory action to the time the employee should have discovered the action's discriminatory nature.[8]

*Dillman v. Combustion Engineering, Inc.*, 784 F.2d 57, 60 (2d Cir.1986); *see also Miller*, 755 F.2d at 24 (explaining that tolling of Title VII time limitations applies only if "the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum.").

Relating the tolling doctrine to the specific facts of this case, plaintiff cites *Jennings v. American Postal Workers Union*, 672 F.2d 712 (8th Cir.1982), for the proposition that "an uncounseled plaintiff should not be penalized for the EEOC's mistake of

---

**6.** Clearly, waiver does not apply in this case since defendants have raised plaintiff's failure to file as a defense.

**7.** Plaintiff also asserts that the intake officer originally assigned to his case was taken ill and the agency did not assign a new case officer until April of 1991. (Edmonston Aff. ¶ 14)

**8.** It should be noted that plaintiff to this day has not filed a complaint with the EEOC based on the September 1990 assault, nor has he moved to amend his original complaint; therefore, it is unclear what plaintiff would have this court "toll" since he has not taken the first step in the

process. Contrary to plaintiff's contentions *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1218 (5th Cir.1982) is inapposite on this matter. *See Pinkard*, 678 F.2d at 1218 ("Barring a Title VII plaintiff, who *received his right-to-sue letter after filing suit*, from ever pursuing his Title VII claim would not only be anomalous, but also would be an extreme sanction, contrary to the general policy of the law to find a way to prevent the loss of valuable rights, not because something was done too late, but rather because it was done too soon.") (emphasis added).

law." *Id.* at 715. As in this case, *Jennings* involved a motion for summary judgment on the grounds that plaintiff failed to file a charge with the EEOC within the applicable time limit. However, in *Jennings* the plaintiff presented to the court two letters from the EEOC informing her that they lacked jurisdiction over her complaint. *Id.* at 714 n. 3. This evidence led the appellate court to remand to the district court for the finding of whether the complaint was filed within the limitation period. *Id.* at 715. In contrast, plaintiff in this case provides no evidence other than his affidavit to support his assertion of misleading by the EEOC. More notably, despite the EEOC officer informing plaintiff that jurisdiction might be proper in another forum, plaintiff did not seek to pursue action against the individual defendants in state (Grandinette Aff.Exh. C), criminal (Grandinette Aff. ¶ 12), or federal court until over one year later. Accordingly, while this court recognizes that plaintiff, like many persons who file EEOC claims, had no counsel to protect his rights when he first undertook action against defendants, (Grandinette Aff. ¶¶ 15–18), it nevertheless finds no genuine issue of fact regarding whether plaintiff "was prevented in some extraordinary way from exercising his rights."

■ Plaintiff, in addition to highlighting the EEOC's error, asserts that promises by MGM contributed to his failure to pursue other forms of relief. For example, plaintiff's affidavit states that in September of 1990,[9] following the alleged assault, MGM—through its president Mr. Demoney—assured plaintiff that the company would investigate his allegations and "take care of everything, including my bills and lost wages." (Edmonston Aff. ¶ 7) From this assertion, plaintiff seems to be arguing that there are questions as to whether this court should invoke the doctrine of equitable estoppel against defendants. The Second Circuit explained this doctrine in *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir.1985),

a case involving a grant of summary judgment based on appellant's failure to file a timely claim with the EEOC:

> Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of ... fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit. Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation.

*Id.* at 49–50 (citations omitted); *see also Dillman*, 784 F.2d at 61 (quoting *Cerbone* and granting summary judgment since conduct did not "amount to the type of bad faith, dilatory actions that require equity to step in and estop a statute of limitations defense.").

Assuming plaintiff's allegation about the call he received from MGM is true, it nevertheless does not serve as an adequate basis for equitable estoppel since plaintiff also states that his mother received a call the very next week from an MGM supervisor who informed her that an investigation had been conducted and that the company had determined that the entire incident was only a joke. (Edmonston Aff. ¶ 8) At that point, plaintiff was aware that MGM would not remedy his grievance. (Edmonston Aff. ¶¶ 8–9) In fact, it was at that point that he sought help from the EEOC. An affidavit by plaintiff's attorney refers to further contact with the same supervisor after plaintiff filed the EEOC failure-to-promote charge; plaintiff's affidavit makes no mention of later promises. And even if MGM did promise plaintiff that they would "handle everything"—his medical bills, lost wages and disciplinary action against his co-workers—their subsequent advice that same month telling him to file a workmen's compensation claim, their revocation of his

---

**9.** In fact, the date given in paragraphs 6 and 7 is September 1992; however, since plaintiff commenced this action prior to September 1992 and

the affidavit refers to the date of the assault, 1990 is correct.

medical benefits several months later, and plaintiff's tenacious pursuit of the pending EEOC claim all belie plaintiff's assertion that estoppel is appropriate here. *Cf. Cerbone,* 768 F.2d at 50 ("On the facts of this case, no reasonable juror could find that [appellant] and his attorney had a basis for believing that the Union's promise of $75 for organizing an occasional meeting was offered in settlement of an ADEA claim or in voluntary compliance with the remedial provisions of the ADEA and that, therefore, they need not file a timely charge with the EEOC.").

In sum, plaintiff raises no genuine issue of material fact preventing this court from finding that his failure to file a timely charge with the EEOC bars this action. Consequently, the statute of limitations defense applies, and summary judgment on plaintiff's Title VII claim is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) ("Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.").

### B. *Claims Under § 1981*

■ Section 1981 of Title 42 of the United States Code provides in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

As mentioned above, the leading Supreme Court case interpreting this statute, *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), refuses to recognize complaints that rest solely on allegations of discrimination occurring after an employee was hired; therefore, as defendant asserts and plaintiff admits, under the current allegations of the complaint, plaintiff does not state a claim for relief under Section 1981 as formerly written and construed.

Section 101(b) of the 1991 Civil Rights Act ("1991 Act") added a new provision to Section 1981:

the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

Whether this and other sections of the 1991 Act apply retroactively has been the subject of much debate. The Second Circuit has yet to give an opinion on the retroactivity question, although several courts in this district have done so to different conclusions. *Compare Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417 (E.D.N.Y.1992) (Amon, J.) (finding no retroactivity as to Section 101(b)) with *Croce v. V.I.P. Real Estate, Inc.,* 786 F.Supp. 1141 (E.D.N.Y. 1992) (Spatt, J.) (finding retroactivity). For the reasons provided in *Hill v. New York City Bd. of Education,* 808 F.Supp. 141 (E.D.N.Y.1992), this court has held that Section 101(b) of the Civil Rights Act of 1991 should be given prospective application only. Accordingly, defendants' motion for summary judgment on this claim is granted.

### C. *The State Law Claims*

Defendants also move for summary judgment on plaintiff's state law claims; these claims include breach of contract, tortious interference with contract, assault and battery, unlawful imprisonment and intentional infliction of emotional distress. The sole ground for this motion is the correct observation that no federal claim remains to which the state claims can be appended. As the discussion above makes clear, plaintiff's state law claims do not have an independent basis of jurisdiction. Accordingly, since this court has granted summary judgment in favor of defendants on all federal claims, plaintiff's state claims—the fourth,

fifth, sixth, seventh and eighth causes of action—are hereby dismissed *without prejudice.*

### III. *Motion to Disqualify Counsel*

Plaintiff moves to disqualify Jones Day as attorney for both the corporate and individual defendants, claiming that these defendants' interests conflict and therefore cause their attorney to violate Canon 5 of the Code of Professional Responsibility. Since all claims in this action have been dismissed, plaintiff's disqualification motion is hereby denied.

### CONCLUSION

Defendant's motion for summary judgment on plaintiff's first, second and third cause of action is granted with prejudice; its motion regarding the remaining claims is granted without prejudice. Plaintiff's motions to amend his complaint and for disqualification of defendants' counsel are denied.

SO ORDERED.